**In the United States Bankruptcy Court**
**For the Eastern District of Pennsylvania**

| | |
|---|---|
| In re | : |
| | : |
| Dianne M. Hibble | : Chapter 13 |
| | : |
| | : |
| Debtor(s) | : Bankruptcy No. 05-38556 SR |

# Opinion

By: Stephen Raslavich, United States Bankruptcy Judge.

**Introduction**.

The Debtor has objected to the claim of AmeriCredit Financial Services, Inc. The objection is opposed. A hearing on the matter was held May 30, 2007 at which the parties offered oral argument. At the conclusion of the hearing, the Court allowed the parties two weeks to brief the issues. Upon receipt of those submissions, the Court took the matter under advisement. For the reasons set forth below, the Objection is sustained.[1]

**Factual Background**

No material facts are in dispute. The pleadings reveal that the Debtor obtained a car loan prepetition from AmeriCredit. In her Chapter 13 case, she scheduled the claim as partially secured.[2] For its part, AmeriCredit filed a Proof of Claim

---

[1] As this matter concerns a challenge to a claim against the estate, it is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

[2] Secured to $23,000; unsecured to $6,700 for a total claim of $29,700. *See* Second Amended Schedule D.

asserting a fully secured claim of upwards of $30,000, although it valued the car at $19,000.  *See* Proof of Claim #10.  In her plan, the Debtor proposed to pay the AmeriCredit claim in full and directly, i.e., "outside" the plan[3]; unsecured creditors would also be paid in full but *through* the plan.  AmeriCredit did not oppose such treatment or otherwise object to confirmation of her plan.  After confirmation, however, the Debtor defaulted on her payments to AmeriCredit.  AmeriCredit obtained relief from stay,[4] recovered the car and sold it at a loss.  That prompted AmeriCredit to amend its secured claim to assert an unsecured claim equal to that shortfall.  The Debtor then objected to the AmeriCredit claim.

**The Arguments**

The basis of the objection is that the amended claim is untimely: it was filed after both the claims bar date as well as the order of confirmation.  *See* Objection, ¶ 12; Transcript (T-) 8.  AmeriCredit's response is that the amended claim relates back

---

[3] This meant that she would make her monthly contract payments to AmeriCredit just as she was required to were there no bankruptcy.  However, she had not been doing even that: AmeriCredit had moved for relief from stay because the Debtor had failed to make any post-petition payment.  *See* Motion for Relief from Stay, ¶ 16.  That motion was resolved via a stipulation requiring Debtor to make double payments for six months to cure the delinquency.  *See* Stipulation

[4] Under the parties' stipulation, AmeriCredit needed only to give 10 days notice of the default and right to cure before it would certify Debtor's default to the Court to obtain relief.  *See* Stipulation.

to its earlier, timely-filed claim.[5]  The amendment does not assert a new claim, AmerCredit explains, but, rather, merely changes its status from secured to unsecured.  *See, generally*, AmeriCredit's Brief.

**Preliminary Considerations**

The issues implicated in this contested matter go beyond a garden-variety objection to an amended proof of claim and the "relation-back" doctrine.  Involved are fundamental questions of what follows from a material default under a confirmed plan.  Because the divergence of opinion on this question is so great—and because there is no controlling authority on point—a full analysis is warranted.

**Post-Confirmation
Change in Circumstances**

Once confirmed, a Chapter 13 plan binds the debtor and all creditors—whether provided for in the plan or not—to its terms. 11 U.S.C. § 1327(a); *see also In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989) ("Under § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.")  But, as is often the case, the debtor suffers a change in circumstances after confirmation which makes implementation of the plan simply

---

[5] Filed February 21, 2006.  Importantly, the claim did not reserve the right to pursue a deficiency claim in the event of repossession.

impossible.  A leading commentator explains what options are available to the debtor when that happens:

> Chapter 13 debtors, during the duration of their plans, often encounter circumstances that were unforeseen at the time of confirmation.  Further persistent deterioration in a debtor's financial condition after confirmation usually leaves only four courses of action open to the debtor.  The debtor may convert the case to chapter 7, apply for a hardship discharge under section 1328(b), dismiss the case or modify the chapter 13 plan in response to prevailing conditions.  A debtor is not eligible for discharge relief under section 1328(b) in circumstances when a postconfirmation modification of the plan is practicable.  The procedure for modification after confirmation is further elaborated by Federal Rule of Bankruptcy Procedure 3015(g).

8 *Collier on Bankruptcy* ¶ 1329.01 (Matthew Bender 15th Ed. revised)  The Debtor in this case has apparently suffered such a change in circumstance: having originally proposed to pay AmeriCredit directly and in the amount of the contract, she has since defaulted and decided to surrender the car.  She has, however, neither moved to convert or dismiss her case, sought a hardship discharge, nor moved for modification of her plan.  All that she has done is to object to the AmeriCredit amended claim.  She maintains that such claim is untimely and, more importantly, would render her plan infeasible if allowed.[6] May the Debtor

---

[6] This would appear to be the explanation for the Trustee's contention that the plan is infeasible.  *See* Motion to Dismiss, ¶ 3. As proposed, the plan would pay 100% to unsecured creditors.  Filed unsecured claims totaled about $8,300.  *See* Claims Register.  The plan

4

address this change of circumstances in such a way?

In the specific context of a post-confirmation surrender of an automobile, courts disagree on the degree of latitude afforded the debtor. There are essentially three schools of thought with regard to what the debtor may (or must) do. The first does not consider surrender to constitute a permissible modification of a confirmed Chapter 13 plan. *See, e.g., In re Nolan*, 232 F.3d 528, 535 (6th Cir.2000). The second reaches precisely the opposite conclusion. *See, e.g., Bank One, N.A. v. Leuellen (In re Leuellen)*, 322 B.R. 648, 653 (S.D.Ind.2005). A third approach avoids the issue of modification altogether and considers the question in terms of claim reconsideration under § 502(j) and lien valuation under § 506(a). *See, e.g., In re Zieder*, 263 B.R. 114, 117 (Bankr.D.Ariz. 2001). The Court will analyze each method below in the context of the applicable Code provisions.

**Res Judicata Effect**
**of Confirmed Plan**
**and Modification**

Section 1329 governs modification of confirmed plans:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, *upon request of the debtor, the trustee, or the holder of an allowed unsecured claim*, to-

---

proposes to pay that amount to unsecureds. *See* Third Amended Plan. If the AmeriCredit unsecured deficiency claim of $18,000 were added to that, the plan would become infeasible.

5

> (1) *increase or reduce the amount* of payments on claims of a particular class provided for by the plan;
> (2) *extend or reduce* the time for such payments;
> (3) *alter the amount of the distribution to a creditor* whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a)(emphasis added). The majority of cases ruling on this point hold that this section does not allow a debtor to surrender collateral and treat any resulting deficiency as an unsecured claim.[7] They are led by the Sixth Circuit's decision in *Nolan, supra,* which based its decision on five premises:

> 1. Section 1329(a) does not expressly allow the debtor to alter, reduce or re-classify a previously allowed secured claim. Instead, § 1329(a)(1) only affords the debtor a right to request alteration of the amount or timing of specific payments. A modification that reduces the claim of a secured creditor would add a claim to the class of unsecured creditors, a change prohibited by § 1329(a).

---

[7]*See, e.g., Sharpe v. Ford Motor Credit Co.*, 122 B.R. 708, 710 (E.D.Tenn.1991); *In re Jefferson*, 299 B.R. 468, 470 (Bankr.S.D.Ohio 2003); *In re Wilcox*, 295 B.R. 155, 157 (Bankr. W.D.Okla.2003); *In re Miller*, 2002 WL 31115656 *4 (Bankr.M.D.N.C.); *In re Jackson*, 280 B.R. 703, 704 (Bankr.S.D.Ala.2001); *In re Barclay*, 276 B.R. 276, 284 (Bankr.N.D.Ala.2001); *In re Cameron*, 274 B.R. 457, 461 (Bankr.N.D.Tex. 2002); *In re Coffman*, 271 B.R. 492, 496 (Bankr.N.D.Tex. 2002); *In re Smith*, 259 B.R. 323, 326 (Bankr.S.D.Ill. 2001); *In re Goos*, 253 B.R. 416, 420 (Bankr.W.D.Mich. 2000); *In re Meeks*, 237 B.R. 856, 861 (Bankr. M.D.Fla. 2000); *In re Coleman*, 231 B.R. 397, 399-400 (Bankr.S.D.Ga.1999); *In re Dunlap*, 215 B.R. 867, 870 (Bankr.E.D.Ark. 1997); *In re Banks*, 161 B.R. 375, 379 (Bankr.S.D.Miss.1993); *In re Holt*, 136 B.R. 260 (Bankr.D.Idaho 1992); *In re Cruz*, 253 B.R. 638, 641-42 (Bankr.D.N.J..2000)

6

> 2. The proposed modification would violate § 1325(a)(5)(B), which mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed. Debtors seeking modification are attempting to bifurcate a claim that has already been classified as fully secured into a secured claim as measured by the collateral's depreciated value and an unsecured claim as measured by any unpaid deficiency.
>
> 3. The proposed modification would contravene § 1327(a), because a contrary interpretation postulates an unlikely Congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset.
>
> 4. Only the debtor, trustee, and holders of unsecured claims are permitted to bring a motion to modify a plan pursuant to § 1329(a). A contrary interpretation would create an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral appreciated, even though the debtor could revalue or reclassify the claim whenever the collateral depreciated.
>
> 5. The language of § 1329 does not expressly state that the plan may be modified to increase or reduce the amount of claims.

*Nolan*, 232 F.3d at 532-34. (citations omitted).  This reasoning, essentially, accords res judicata effect to the debtor's proposed treatment of a secured claim.  What must necessarily follow from this is that the court must either convert or dismiss the case, or the Debtor must request a hardship discharge.

The contrary line of cases holds that a confirmed plan may be modified to account for surrender of an automobile because of

7

subsection (b) of § 1329. That subsection makes those same requirements which are applicable to confirmation likewise applicable to modification: "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." 11 U.S.C. § 1329(b)(1). A most thorough analysis of this thinking is provided by United States District Court for the Southern District of Indiana in *Leuellen, supra*. The *Leuellen* Court undertook an examination of these provisions and concluded that such a modification was permissible:

> *Section 1322(b)(8)*, which is [made applicable by § 1329(b)(1)], states that the plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." This option contemplates surrender of collateral as a form of payment, and section 1322(b) applies without qualification to modifications under section 1329(a).
>
> Under *section 1325(a)(5)(C)*, also applied to section 1329(a) by subsection (b)(1), a debtor may choose to surrender property securing a claim prior to confirmation.
> …
> Accordingly, Congress's explicit incorporation of section 1322(b) and section 1325(a) into the standards for post-confirmation modification under section 1329(a) makes clear that Chapter 13 debtors retain the option to seek court permission to modify a confirmed plan by surrendering collateral to pay a secured claim. [citations omitted].

*Leuellen*, 322 B.R. at 652-53 (emphasis added).

8

The District Court in *Leuellen* next addressed some of the premises of *Nolan*. In rejecting the distinction drawn between claims versus payments, the *Leuellen* Court found that claim adjustment is available under § 1323(c). That section, in turn, is made applicable by §1329.[8] *Id*. at 656-57. Equally, surrender did not constitute disparate treatment of secured creditors because the Code allows secured creditors to be separately classed. *Id.* at 657. Finally, post-confirmation surrender did not unfairly shift the risk of collateral depreciation to the auto lender. The secured lender could take a more active role in the confirmation process knowing that "the risk of depreciation of collateral is a risk a secured creditor always bears. That is why car loans usually bear higher interest rates than home mortgages." *Id.* at 660. And on the subject of abuse, the *Leuellen* Court pointed out that § 1329 requires that the modification be proposed in good faith. *Id.* at 661. That is a question of fact determined on a case by case basis. *Id.* In sum, the District Court in *Leuellen* sees the same protections

---

[8]That section provides:

> Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, *unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification,* and such holder changes such holder's previous acceptance or rejection.

11 U.S.C. § 1323(c) (emphasis added).

9

which apply to confirmation as applying equally to modification.[9]

**Post-Confirmation Secured Claim**
**Reconsideration and Valuation**

But the issue is not exclusively viewed in terms of modification.  Other courts focus not on the plan, but on the particular secured claim whose treatment has been somehow altered.  A change in circumstances may have the practical effect of redetermining the extent of that secured interest.  In that regard, Code § 506(a) provides: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, …, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, …, and is an unsecured claim to the extent that the value of such creditor's interest,…, is less than the amount of such allowed claim."  11 U.S.C. § 506(a)(1).  This warrants reconsideration of the secured claim under § 502(j) which provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.…"  11 U.S.C. §

---

[9] For cases in accord with *Leuellen, see*: *In re Jock*, 95 B.R. 75, 77 (Bankr.M.D.Tenn.1989)(abrogated by *Nolan*); *In re Day*, 247 B.R. 898, 901 (Bankr.M.D.Ga.2000); *In re Anderson*, 153 B.R. 527, 528 (M.D.Tenn. 1993)(abrogated by *Nolan*); *In re Rimmer*, 143 B.R. 871, 873 (Bankr.W.D.Tenn.1992)(abrogated by *Nolan*); *In re Frost*, 96 B.R. 804, 808 (Bankr.S.D.Ohio 1989); *In re Arenciba*, 2003 WL 21004969 *4 (Bankr.S.D.Fla.); *In re Townley*, 256 B.R. 697, 699 (Bankr.D.N.J.2000); *In re Knappen*, 281 B.R. 714, 715 (Bankr.D.N.M.2002); *In re Ward*, 348 B.R. 545, 550 (Bankr.D.Idaho 2005); *In re Bell*, 339 B.R. 309, 315 (Bankr.W.D.N.Y.2006); *In re Marino*, 349 B.R. 922, 923-24 (Bankr.S.D.Fla.2006)

502(j). The cases that follow this reasoning allow the Chapter 13 debtor to surrender collateral postconfirmation without modifying the plan. In some cases, they grant the lender an administrative expense for any unpaid postpetition use of the collateral. *See, e.g., In re Zieder*, *supra*; *In re Jefferson,* 345 B.R. 577 (Bankr.N.D.MIss.2006); *In re Rayborn,* 307 B.R. 710, 720 (Bankr.S.D.Ala.2002); *In re Mason,* 315 B.R. 759 (Bankr.N.D.Cal.2004); *In re McBride*, 337 B.R. 451, 462 (Bankr.N.D.N.Y. 2004) (also allowing as administrative expense to creditor the total of monthly unpaid postpetition payments)

It is from this third group of cases that this Court has found one decision which involves the identical fact pattern. In *In re McBride*, *supra*, the secured creditor[10] had filed a secured claim asserting fully secured status in the debtor's car. *Id.* at 453. And just as here, the Chapter 13 plan proposed to pay the secured claim in full outside the plan. *Id*. Likewise, the debtor defaulted post-confirmation and the secured lender moved for stay relief. *Id.* The language in the order granting relief is resonant: it provided that any surplus resulting from collateral disposition would go the trustee, but was silent as to what rights the secured creditor had in the event of a deficiency. *Id*. at 454. Finally, after the secured lender recovered the car and sold it at a loss, it filed an amended

---

[10]Coincidentally, that secured creditor was AmeriCredit.

claim in the amount of the deficiency. An objection was lodged as to that claim.

While the *McBride* Court's ruling ultimately would "reconsider" the secured lender's claim based on the equities, it disposed of the amended unsecured claim on procedural grounds. The Court started from the premise that to be an amended claim which relates back to the filing of the original claim, the amended claim must bear a relationship to the original claim and must simply be a correction or supplementation of that claim supported by the same operative fact which gave rise to the original claim. *Id.* at 460. In its original claim, the *McBride* Court found, AmeriCredit provided no notice that it would seek a deficiency claim in the event of a default. *Id*. Neither was there a provision in the plan contemplating a deficiency claim being paid on an unsecured basis. *Id*. Finally, AmeriCredit even failed to plan for a deficiency when it obtained relief from stay despite the fact that it knew that the collateral was depreciating. *Id*. at 462. All of this doomed its attempt to recover the deficiency via an amended claim.

But the *McBride* Court's rejection of AmeriCredit's attempt to change the status of its claim from secured to unsecured did not end the matter:

> [ ]The fact of the matter is that Americredit did timely file a proof of claim. The Court does not agree with the majority in *Adkins* that AmeriCredit is entitled to receive

12

payment on its deficiency from the Debtor's estate as a secured creditor despite the fact that it repossessed its collateral. The Court believes that the most appropriate approach under the circumstances of this case is to treat the Debtor's motion as one pursuant to Code § 502(j)…

Code § 502(j) states that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). In the view of the Court, Code § 502(j) gives the Court the discretion to balance the interest of both AmeriCredit and the Debtor based on the totality of the circumstances of the case.
…
In this case, AmeriCredit filed no opposition to the provision in the debtor's plan that it continue to receive the payment of $306.10 per month directly from the Debtor. AmeriCredit has not offered any evidence of abuse to the vehicle on the part of the Debtor which would have accounted for the $8,000 depreciation AmeriCredit alleges. The Court also takes into account that AmeriCredit, in seeking relief from the automatic stay, delayed approximately five months before making its motion in August 2003. *At the same time, the Court believes that sufficient cause has been established pursuant to Code § 502(j) by AmeriCredit to warrant the granting of a administrative expense claim pursuant to Code § 503(b) of $2,248.80 (8 x 4306.10) as adequate protection for the Debtors use of the vehicle for the period from March 1, 2003, the date of default, through October 27, 2003, the date off repossession which takes into account the payments made by the Debtor postpetition between October 16, 202, the date off the filing of the case, and February 28, 2003.*

*Id*. at 460-62 (emphasis added). In sum, an unsecured deficiency

claim filed out of time did not relate back to the earlier secured claim; however, fairness dictated that the lender receive something for the debtor's post-petition use of the car.  This Court finds this approach to have the most appeal of the three. It is just and reasonable as to *all* parties involved in the bankruptcy proceeding and will, therefore, be adopted here.

**<u>Does the Deficiency</u>**
**<u>Claim Relate Back?</u>**

The Court begins with an analysis of AmeriCredit's contention that the amended claim relates back in time to the original claim.  Amendments to timely proofs of claim are liberally allowed and may relate back to the initial filing if filed after the bar date, but will not be permitted if they actually constitute new claims.  *See In re Metro Transportation Co.*, 117 B.R. 143, 147 (Bankr.E.D.Pa.1990).  If the initial proof did not "give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment" then the amendment asserts new claims and will not be allowed.  *Id*. (quoting *In re Westgate-California Corp.,* 621 F.2d 983, 984 (9th Cir.1980)  On the other hand, amendments that merely cure defects in the previously-filed claim, describe the claim in more detail, plead new theories of recovery on the same facts presented in the initial claim, or increase damages do not constitute new claims.  *In re Ben Franklin Hotel Assoc.*, 1998 WL 94808 *3 (E.D.Pa.) What is the effect of this new claim?

14

Like its amended claim in *McBride*, AmeriCredit's amended claim in this case asserts entirely new matter: it is for a deficiency resulting from disposition of collateral. This change is highly significant. Unlike secured creditors,[11] unsecured creditors *must* file claims in Chapter 13 to receive payment. *See* B.R. 3002(a). This was all the more reason for AmeriCredit to have reserved the right to seek a deficiency. They certainly cannot argue surprise: their original proof of claim acknowledges that they were undersecured by about $10,000.[12] *See* Proof of Claim. For that reason, the Debtor's Objection to AmeriCredit's amended claim will be granted.

**Debtor's Post-Petition Use of the Vehicle**

That however, is not the end of the analysis. Eleven post-

---

[11]*See In re Hill*, 286 B.R. 612, 615 (Bankr.E.D.Pa.2002) ("As a general rule, a secured in a Chapter 13 is not required to file a proof of claim but may choose to ignore the bankruptcy proceeding and look to its lien for satisfaction of the debt.")

[12]That, in particular, troubles the Court. It appears that AmeriCredit believes it could assert a right analogous to that provided in § 1111(b). That section allows an undersecured creditor in a Chapter 11 case to have its claim treated as fully secured whether the underlying obligation is recourse or not. 11 U.S.C. § 1111(b)(1). No such provision exists in Chapter 13. T-20; *see In re Castro*, 285 B.R. 703, 712 (Bankr.D.Ariz. 2002)(noting the absence of such provision in Chapter 13); *In re Gray*, 285 B.R. 379, 387 n.32 (Bankr. N.D.Tex.2002) ("The absence in Chapter 13 of provisions similar to sections 1111(b) and 1124 suggests Congress did not intend an undersecured creditor to receive full payment at the expense of other unsecured creditors."); *In re Cushman*, 217 B.R. 470, 475 n.8 (Bankr.E.D.Va.1998) (same)

15

petition months passed before AmeriCredit obtained relief from the automatic stay: The case commenced October 15, 2006; AmeriCredit's Motion for Relief was filed February 2006 alleging defaults for all four post-petition months[13]; a stipulation was reached in May 2006 whereby the Debtor would make 6 months of double payment to cure the delinquency; AmeriCredit certified a default under the stipulation in August 2006 alleging that the Debtor made only one of the first four double payments; an Order granting relief was entered on September 13, 2006; and sometime between September 13 and December 15, 2006 (the date of the amended AmeriCredit claim) AmeriCredit repossessed the car and sold it at a loss. *See* Docket, Motion for Relief, Stipulation, Certification of Default, Order Granting Relief from Stay, and Amended Proof of Claim. During these months, the Debtor was still in possession of the collateral. At a minimum, the Debtor used the car for eight postpetition months without paying AmeriCredit.[14] Fairness requires that AmeriCredit be paid for that use. This should not pose a financial burden given that

---

[13] The Contract provided that the Debtor's payments were due on the 7th day of the month. See Exhibit "A" to Motion for Relief.

[14] The Certificate of Default states that the Debtor made only the double payment that would have paid for May and June 2006. *See* Certification of Default. However, the Amended Proof of Claim lists "Principal Payments by Trustee" of $1854.07. *See* Amended Claim, supporting documentation. While this appears to be a typo given that AmeriCredit was being paid, if at all, outside the plan, it equates roughly to three monthly payments and Debtor will be given credit for such.

16

returning the car has decreased her monthly expenses by $595.[15] It will also not compromise the Debtor's ability to pay the unsecured claims in full.  For those reasons, AmeriCredit shall be awarded an administrative expense for eight monthly payments: $4,766.40 (8 months @ $595.80/month).

**Summary**

The Debtor's Objection to the AmeriCredit Amended Claim will be sustained.  In lieu of allowance of the amended claim, AmeriCredit shall be awarded an administrative expense claim in the amount of $4,766.40.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:    July 18, 2007

---

[15] No evidence is offered of any new vehicle having been purchased. Counsel stated at the hearing that he "[thought] they bought a junker in the meantime" but that is hardly probative evidence.  T-4. Moreover, the Debtor did not appear at the hearing.

**In the United States Bankruptcy Court
For the Eastern District of Pennsylvania**

| | |
|---|---|
| In re : | |
| Dianne M. Hibble | : Chapter 13 |
| Debtor(s) | : Bankruptcy No. 05-38556 SR |

## Order

**And now**, upon consideration of the Debtor's Objection to Amended Proof of Claim No. 10 of AmeriCredit Financial Services, Inc., the Response of AmeriCredit thereto, after oral argument and submission of briefs, and for the reasons set forth in the attached Opinion, it is hereby:

**Ordered**, that the Objection is sustained and that the claim of AmeriCredit is disallowed; and it is

**Further Ordered**, that AmeriCredit shall be allowed an administrative expense claim in the amount of $4,766.40.

By the Court:

_Stephen Raslavich_
Stephen Raslavich
United States Bankruptcy Judge

Dated: July 18, 2007

Interested Parties:

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Counsel for Debtor

Michael D. Ward, Esquire
1518 Walnut Street, Suite 805
Philadelphia, PA 19102


Counsel for AmeriCredit

Brian N. Caine, Esquire
DEILY, MOONEY & GLASTETTER
One Greentree Centre, Suite 201
Marlton, NJ. 08503


Counsel for the Trustee

Polly Langdon, Esquire
2901 St. Lawrence Avenue
P.O. Box 4010
Reading, PA 19606